Good afternoon, your honors. May I please the court? My name is Juliana Lutin and I represent seven of the petitioners in this case. Four of them are adults and three of them are children. And I intend to watch my time and I would like to reserve three minutes for rebuttal. Okay. This case has four issues. The primary is whether the BIA error in not finding a nexus between my client's persecution and their political opinion. The second issue is whether the BIA and the immigration judge error in denying not finding that my clients were unable and unwilling to return to El Salvador. The third issue is whether the BIA made a decision that supported by substantial evidence that reasonable relocation was available to petitioners. And the last was whether the BIA and IJ were correct in denying my clients withholding for removal relief. The main issue is that the judge did not consider all of the evidence provided to the court. The immigration judge found all of the petitioners credible. However, she decided to believe some evidence and not give enough weight to other evidence. Petitioners testified that the problem started after the construction of a bridge because my clients were very active supporters of the arena political party. And they were very open about it. They were providing all the assistance they could. They would go and get people to vote. They would advocate for them. They would work memorabilia. And then they provided help to build the bridge. So it was very noticeable that petitioners were very actively supporting the arena party. Right after the construction of the bridge, that was a big deal for this town because the opposing party, the FMLN, started targeting my clients around December 18, 2018. And they started by shooting at my petitioner's grandfather's home, Mr. Valladares. They shot at the door and they put a note underneath stating that they had to provide $10,000 or that they were going to kill the family. Can I interrupt you right there? Obviously, in part, this is a case in which the ill-treatment, I'll call it persecution, of the family is motivated because they want $10,000. And, of course, it does not defeat your case if one central reason is they want $10,000. But we need also, in order to get to you where you need to go, to find that another essential reason is political affiliation. How strong is the evidence that this is political opposition to the political party such that you can satisfy the essential reason standard? The evidence is very strong, Your Honor, because petitioners testified and the testimony was considered credible that when they received the threatening phone calls, the caller would also tell them to stop advocating for the Arena Party and question them about their reasons for supporting the political party. When they asked for $10,000, petitioners offered $1,000 because that's all they had and that money was rejected. And he said, go get the money from your millionaire party, the Arena Party. Also, when the house was burned down and after one of the respondents received two additional threats, the mayor of the town, who was also part of the Arena Party, was able to help petitioners and he investigated and discovered that the FMLN were behind these threats. When Roberto, one of the petitioners, was questioned about it, he testified that he believes that the main motive was their political opinion because a normal criminal will ask for the money and they usually will ask for the amount of money that they believe the people can pay or they will accept whatever money they can get. Also, the other issue was that around May of 2017, after petitioners left El Salvador, a few years after that, one of the petitioners' mother was cleaning their empty house and four armed men showed up to the house inquiring about the whereabouts of petitioners. One of the petitioners' mothers didn't give them that information, but they told her that they knew they were in the United States and that they were going to be waiting for them if they were to return. Just procedurally, I just wanted to confirm, do you agree that the agency's finding of a lack of past persecution is not before us? No, I don't, Your Honor. Was that challenged in the opening brief? We talked about the persecution, we didn't only address persecution, we addressed persecution in general and addressed the past persecution as well as future persecution in our brief. Where in the opening brief did you discuss, did you challenge the BIA's finding that your clients failed to establish past persecution? Where can I look in your brief to find that? It was not openly challenged, it was just addressed and we addressed persecution in general. Well, you talk about a fear of persecution, which is kind of future persecution, but I was just wondering, I don't see a challenge to the finding that there was no past persecution, which would mean that you would not enjoy the presumption of future persecution. I will look into it, Your Honor, and I will get back to you about it. Something that I found very alarming about the immigration judge was that in the middle of the first of four testimonies, she already had made up her mind that she was going to deny my client's case. And that's in AR 213, line 1 to 4, when I asked the judge to document that my petitions were crying, and then she said at night quote, they are all upset. None of them want to go back. They are all upset that they all will have to go back. So she had already decided that she was going to deny it and stated it in the record. Ms. Luton, I read the transcript, and that statement was after several exchanges where you had asked the immigration judge to let the record reflect that somebody in the gallery is crying, that somebody testifies crying, and it went on and on and on. And I think the immigration judge was somewhat frustrated and rightfully so that you can't create a record in that fashion because the immigration judge is the fact finder and also the person who is evaluating demeanor and making those decisions. It's not much on an appellate record for the record to reflect somebody was crying. We're not evaluating their demeanor. So I don't think the immigration judge, I don't think it's fair for you, after the way that hearing was conducted, to come in and suggest the immigration judge had already made up her mind. These were pretty lengthy exchanges before the immigration judge was like, fine, they're all crying. It says that. Please stop doing that. Please stop interrupting. So I for one don't accept that, and I will tell you I don't accept it based on reading the transcript. Also, the immigration judge also heard that relocation was unreasonable. There is a record that the grandfather went back, but they are not similarly situated. He's older. He's in 80, 84 years old, and he said that he was born in El Salvador and wanted to die in El Salvador. Well, there's also a testimony that they're afraid to go out. We're about to take you over time, but please just don't worry about that. We'll give you two minutes, but there's enough in this case. I think I've got one more question and the other judges may have questions, too. So we'll just we'll just ask the questions and learn what we need to learn. I've got a question about the BIA saying that protection was provided by the mayor for two and a half months after which they come to the United States. Oh, well, Miguel and his wife went earlier. The remainder left after two and a half months of protection. What does that do to your claim? Because it may be then that there's an argument that the government was actually willing to protect. And the testimony was, well, my son in law can't live like this. And so we're going to leave. And the mayor then advises them to leave. But there was protection provided for two and a half months. What do we do with that? The BIA misstated the evidence, your honor, because the mayor helped them personally and provided that help. But it was not the police that provided it. It was he helped him personally. And there is a letter of the mayor in the record, too, where the mayor stated that he advised them to leave El Salvador because he could no longer protect them. Yes, well, I agree that the BIA misstates the record. It's pretty clear that the protection during that two and a half months was not protection by police. It was private. It was private security. No other BIA misstates when it says it's police. On the other hand, what my question in a sense still remains, though, is the mayor who's providing the protection, whether it's police protection or private security. Yes, your honor. It's a small town. Santa Rosa de Lima is a small town in El Salvador. And it was more like a personal favor because Roberto worked for the mayor and they were very active in electing the mayor in that town. And they were friends and he helped them. And that's when the major did the investigation. He said he was not able to protect them, even though it pains his heart. He had to advise them to leave because they were not safe in El Salvador. OK, unless there are further questions at this time, let's hear from the government. But then we'll give you a chance to respond. Thank you, your honor. Mr. Robbins. Can everyone hear me? Yes. OK. May it please the court. I'm Jonathan Robbins here on behalf of Merrick Garland, the attorney general. Good afternoon to everyone. As you just discussed a little bit with my colleague. The three primary issues in this case are whether the record compels reversal of the agency's finding that petitioner did not establish a nexus to a statutorily protected ground. Whether the record compels reversal of the agency's relocation finding and whether the record compels reversal of the agency's finding that the government in El Salvador would be willing and able to control any would be perpetrators of harm against the petitioners. The closest question in this case by far is, I think, the nexus finding. So why don't I start there? Judge Fletcher, you asked a question about what the evidence shows with respect to motivations or potential political motivations. The evidence does have some evidence that certainly that the perpetrators of the harm knew that the individuals here had political were part of the arena political party. I don't think there's any question about that. But what's required under nexus is more than that. The perpetrator of the perpetrators of the harm and know that the person has the characteristic. They have to be motivated on account of that characteristic. And I think what made this a bit of a skeptical claim to the immigration judge on the issue of nexus is that when he was pressing Mr. Soto Vasquez on the threatening phone call that he received. And he was trying to figure out who it was that was behind the phone call. Mr. Soto Vasquez said that he thought that these were criminals who had been hired by the FMLN to politically persecute them. And the problem with that claim is that if that is the theory of the case, that the FMLN is hiring criminals to politically persecute people. It doesn't really explain why petitioners would have been the only one singled out for political persecution. The immigration judge was looking at the broader context of what was going on here and other political other. You're talking about why they were singled out. I don't know. This is not a singling out question. It is if they are being persecuted because of their political opinion. That's what's happening. And we do have evidence, which I guess we're supposed to take as credible that these gang members are working for the opposing party. And they're not only saying I want $10,000. They're also saying quit working for the party. Well, is that an accurate statement in the record? There is. I would say that it's accurate to say that there's mixed evidence. I think this is a record where a reasonable fact finder could make the inference that there was persecution on account of a protected on account of political opinion. But there's also countervailing evidence such that a reasonable fact finder could also also reach a different conclusion. You are correct that Mr. Soto Vasquez testified that when he had had the call, the perpetrator of the harm did mention his political opinion. But if you take a look at page 1076 to 1077 of the record, this is the portion of the record where he's describing what was happening in the phone call. And he's discussing what the extorters of the money are saying. He explains that he was he I couldn't gather that. I was I told him I couldn't gather that big amount of money. And he told me, I don't know how you're going to do it. And they said, what do you mean you can't gather it? I mean, you work with Jorge Rosales in your party. They're millionaires. And I said, I do work for him. And the money that he gives is not for me. It's to invest in the work that we're doing. They said they didn't care that they were not going to stop and that when I least expected it, I was going to know who they were and they were not playing around. So there's different views you can take of this particular claim. You could. I understand that, of course. But my understanding of the record is that he was also told to quit working for the arena party. So I think they did make some comments about the about that. I can see that. But the question is, I mean, somebody extorting somebody and making extortion. Yes. What you read to me is clearly telling us that they want ten thousand dollars. This is clearly an extortion case. The issue in front of us is whether it is also a case in which they're after them because they're working for the party. And he says they're telling me to quit working for the party. I do concede that they said that. But when an extort when somebody is making an extortion of demand and they're trying to intimidate their victim, they may say all different types of things about particular characteristics that they know that the person has. And they certainly knew that they were members of the arena party. They were calling the millionaires. They were saying that they had the money. They knew they could get this money. So the fact that they would be intimidating them on certain characteristics that they knew they had, it may be indicative of a potential political motive. But the immigration judge said, well, I have that evidence. But I also have evidence here that nobody else in the town who worked for the arena party was suffering the same type of persecution. Right. There were other higher ranking members, other people involved with the construction of the bridge. So what is it about these petitioners that made them different, that made them the targets? And the difference was, was that they had demonstrated their wealth in the community. They had contributed to the construction of the bridge. They had provided the venue for the inauguration. They had provided the food. So in other words, yes, they may have made comments about their their politics. Many extorters will often make those types of statements in an attempt to intimidate their their victims into getting them to do what they want to do. But it is a plausible view of the evidence, particularly when you consider the theory that petitioners were claiming that the FMLN was hiring gang members specifically to politically persecute them. Why would the FMLN do that if it was just to focus solely on the petitioners and not other arena party members? I think the immigration judge explained that that the evidence was too scant to make that inference. Now, I concede that a different reasonable fact finder might reach a different conclusion. They might look at this and say, I think there is enough here to infer that there was a political motivation. But under the standard of review, the record has to compel a contrary conclusion. And when the evidence goes both ways and when you have countervailing evidence, then the court should defer to the decision of the fact finder in that situation under the standard of review. So, Mr. Robbins, before we run out of time, I wanted to leap to another issue, which is whether they could reasonably relocate. And we know from the record that the grandfather and grandmother returned to El Salvador more than once. They returned at least twice. They were unharmed. But petitioners argue that their circumstances are different. They should be considered different. And so that shouldn't be evidence that undercuts the claim that they could relocate. How does the government respond to that? Well, I have two responses. The first is if you look at page 1111 of the record, it's not just the parents that continue to reside in El Salvador. He stated that the mother, father, three sisters and two of the brothers remain in El Salvador. So the notion that only old people that are waiting to die or whatever, I'm not quite sure what the claim is. But the notion that it's only people that are old and not going out. There are other members of the family that continue to reside there. The judge asked specifically, have they ever had any problems in El Salvador? Any threats from anyone? Any physical harm? Mr. Sortovescu has rebutted, no, thank God, no. So it's not just the parents that are there that have relocated. There's other family members there as well. But are the other family members, are they members of the Arena Party? Have they evidenced the same political views? Are they the same in that sense? Not all of them. I think one of them was a minor, so he wasn't involved with the Arena Party. I'm not clear on the other brothers, on the other siblings that remain there. It's not entirely clear from the record. But even if you were just looking at the parents that were able to relocate, what they testified to is that they were able to move an hour and a half away from El Progreso and that they haven't been bothered since. And that is significant because they are saying... Wait a minute, please. They're testifying that they're afraid to go out of their apartment building. They're not saying they haven't been bothered. They're saying we are afraid and we're not leaving the building. Isn't that the testimony? That may be the testimony, but again, the immigration judge has to... That doesn't mean you can't just say they're back there and they haven't been bothered. They're staying inside because they're afraid. Well, if they were being sought for persecution, the fact that they're an hour and a half away, they may claim that they're not being able to go out, but the immigration judge was looking at the entirety of the evidence and saying, look, I look at the country conditions reports. It does not suggest that Arena Party members are being persecuted throughout the entirety of El Salvador. In fact, it's a political party that has a great deal and a significant amount of influence and power in the country. So the notion that you wouldn't be able to go anywhere in the country is not supported by the other evidence in addition to the specific evidence that he was able to return to the country. I would also point out that even though they are claiming that they are stuck in the house, the grandfather made multiple returns. So this is not just one return and going. He also returned in 2014. Making multiple returns, the case law is pretty clear that that undermines a well-founded fear of persecution when a person is willing to do that. So I do think the evidence does reflect, or at least the evidence is not sufficient to compel a contrary finding to what the immigration judge found here, that relocation would be safe and possible. Counsel? Yes. What is your view on whether or not past persecution was addressed in the opening brief? Well, as we mentioned in our answering brief, we believe the issue is waived because it's not raised in the opening brief. And that does have significance in terms of the burdens of proof in this case because there wouldn't be a presumption of a well-founded fear of future persecution and the burden of relocation would fall on the petitioners in that case. So if somebody, for example, if they had contested past persecution and the court were to find that there had been past persecution, the burden on relocation would shift. So really the burden is not at issue here. The burden on relocation isn't really at issue anyway because it was really based on the affirmative ability of the grandfather to relocate and his multiple returns to the country. So it's not a situation where there's really a gap in proof. It's really the country evidence doesn't suggest that Arena Party members are persecuted throughout the country and you have specific instances of the family being able to return and making multiple visits. But I don't think it is in their opening brief to answer your question directly. I think it was waived, and that's why we argue that it was waived. I see that I'm out of time. Did Your Honors want me to address willingness or ability, or did you want me to just stop? I've got one more question, and I think it may be what you were just addressing. The BIA says and uses it as a ground for denial of relief that the mayor provided police protection for two-and-a-half months. The BIA is wrong in terms of the police. It's pretty clear that the testimony is that it's private security, not police. That's correct. But it's provided by the mayor, which brings up the question about being protected by the government. On the other hand, if we believe the testimony of the petitioners, the national government is this FMLN party, and the persecution is being done by the government. So to say that the mayor is providing private protection, I'm not sure that that says that the government is providing protection. It's the government that's doing the persecution. How do you respond to that? Well, again, we don't think the record establishes that the FMLN is involved in – or excuse me, that the government of El Salvador is involved in the persecution of petitioners. Petitioners themselves – Just a minute, please. We have testimony that is treated as credible, that the gang is working on behalf of the FMLN. Are you saying that I shouldn't pay attention to that testimony? No. What I'm saying is that that testimony is certainly subjectively credible. I don't dispute that. But the immigration judge found that it wasn't objectively reasonable in the context of the larger claim that was being made because there are other – In other words, it doesn't make sense that the FMLN would – It's understandable why the petitioners would believe that that was the case, why they would believe that these were criminals who were hired by the FMLN. But the immigration judge found that that hadn't been established and that that was speculative. So I'm not suggesting that the petitioners aren't credible. But the immigration judge did not agree with that theory of the case. Now, as far as the willingness or ability to control, there's no government, not even the United States, that can prevent a crime from 100 percent happening. What we look to when we're looking at whether a government is willing or able to control a would-be perpetrator of harm is we look to the response of the government and is it a reasonable response and one that we would expect if somebody were seeking assistance from the government. And the petitioners received the proper assistance from the government in all the situations where they asked for it. When their house is on fire – It depends on what you mean by the government. So this comes back to the same point. Assume for a moment – I understand you disagree – but assume for the moment that it has been established that the gang is working on behalf of the FMLN so that we're now getting threats from the FMLN working through the gang. And so now this is bad behavior, which I'll assume for the purpose of the question, is persecution. So to talk about protection by the government when it is the government that's doing the persecution strikes me as odd. How do you respond to it, going along with my assumptions? You disagree with the assumptions. I get that. But the question is, if it is the government itself that's doing the persecuting, how does it help your case that the mayor, because of friendship or some other form of affiliation, is providing private security? I'm not sure how to answer that. Part of the reason I'm not sure is because I think that's an issue that the board would have to address in the first instance. If you're talking about two competing factions of a government, one of which is persecuting and one of which is protecting, I'm not sure how the board would deal with that. They didn't address it in this case because they didn't think it was an issue, but I don't know that I've ever seen a case where that was an issue. I have seen cases where the court has emphasized that the agency should look more to the local government as opposed to the national government. The government has in the past tried to argue, for example, that the national government is taking steps to do something, and the court has basically admonished the government and said, well, the local people weren't doing that, so we should focus on what the local people did. If we're doing that in this case, and we're focusing on what the local individual was doing, the local person was the mayor, and he was providing protection. The fire department that was there was also providing help when they managed to get control of the fire when their house was burning. Every time the petitioners availed themselves of the local help in this case, they were protected. But I'm hesitant to make some sort of— I have a question for you about this. El Salvador is a country that has a national government. They elect a president. They have local government, because we know about a mayor. I'm not sure how they're divided up into what sort of political areas. It's similar to us having states and counties and cities, or if it's different in some fashion. But I think that the premise— and I don't know that I saw petitioners argue this, so this is also puzzling to me, but the premise that whoever wins the national election for presidency is synonymous with the government. So that would mean that the United States government is synonymous with the Democrat Party right now, because President Biden is a member of the Democratic Party. I mean, what's the political situation in El Salvador? Is there anything in the country conditions, anything that would explain that? I mean, is it fair to conclude, because one party member won the national election, that that means the El Salvador government is synonymous with that political party? I don't know that there's enough— I don't know enough about El Salvador itself to be able to answer that personally, and I don't think the record sheds enough light on that for me to answer definitively. I mean, petitioners appear to be implying that, but if you look at— there's some record evidence, for example, that shows that after the election of the FMLN individual as president, that the Arena Party won more seats in what appears to be sort of more of a congressional type of election. They won a handful more seats than the FMLN. So I don't know— I don't have a better answer for you than that. I don't know exactly if it's considered synonymous with the government. What I do know— all I can repeat is what I said to Judge Fletcher about, you know, when we're talking local versus national, the court has emphasized the importance of the local— what the local authorities have tended to do. But I don't know the answer. So that's the long way of saying I don't really know the answer. I see that I'm well over time. I don't want to abuse the time, so unless your honors have any specific questions, I'll thank the court for the extra time and ask that the petition for review be denied. Any further questions on the bench for the governor? No. Thank you. No, thank you. Let's put two minutes on the clock for Mr. Briggs. Your honor, I do have an answer for the question about whether the police is synonymous to the government in power. And that's in AR-228, line 1-218, where Roberto testified that the FMLN controls, and when the party gets elected, they appoint the chief of police, and they usually watch each other's backs. So if the police has an interest to not investigate because it's their own party who's creating the problem. Ms. Luton, can I ask you to clarify that a little bit? Your client, the petitioner, was testifying that when a party is elected, they can appoint the police chief. Is he talking about the mayor, the local mayor, who in this case was Arena? He's talking about the presidential elections. So the president of El Salvador appoints all the local police chief is what your client claims. He stated that when a party wins, they get to appoint the police chief, and they put their supporters in those positions. There is no mention about the political affiliation of the firefighters, but the petitioners made a point that when the house was on fire, they called the fire department and the police at the same time. The fire department is about 45 minutes from their house, and the police was 10 minutes away from their house. The police arrived 55 minutes later, about, and the firefighters arrived about 45 minutes before. When the police arrived, they had already extinguished the fire, and the fire department had already determined that the house was an act of crime. The fire was an act of crime, and the police knew about it. Can we go back to the political issue, though? I mean, you are suggesting that the agency should have inferred or that we should have inferred that that means that the police deliberately didn't respond when a fire department clearly has more urgency in responding to an active fire. That's their job, to go put out the fire. They should get there first. But in any event, on the political party issue and whether that means they control the government, did you argue that before the agency, and did you argue it in your opening brief? And if you did in either place, please give me citations. Let me get everyone. I addressed the willingness and being unable to control the government on page 19. Does your argument say that the FMLA is synonymous with the government, the same thing? I can't pinpoint that at this moment, Your Honor, but it was part of the testimony that the police did investigate when they knew that by the fire department they have reason to know because when police show up, they usually go to find out if it was an act of crime or just an accident. They were clearly told by the fire department that it was an act of crime and they didn't ask. One of the petitioners didn't tell them about the threats, but they should have investigated the fire because it was an act of crime. When the mayor needed assistance to protect the petitioners because he couldn't afford to continue doing it himself, the police refused to help. And that's when the mayor told them, you should leave because I can't protect you. As to the relocation matter, one of the petitioners testified that the grandfather, he's like a prisoner, that he's even losing his memory because he doesn't go anywhere. His sister is the one that goes shopping for him. He's afraid. He doesn't advocate for the political party again. There is nothing in the record that states the political affiliations of the other family members here. What about when the grandfather returned on earlier trips? Did he stay locked up somewhere and not advocate? I mean, what did he do? I think the first trip back is in December 2014, shortly after all of the events at issue. Right, and he went back. But petitioners were still there at that point. But when he went back to stay, he's not free to move. He doesn't hold the political opinion anymore. And petitioners testified that if they are forced to return, they will continue to advocate for the political party because it aligns with their views. And they want the best for the country and the future for their children. They also said that the grandfathers are in hiding right now and can't afford to rent that apartment and not be able to go out because the petitioners here are sending them money so they can survive. If petitioners were sent, they will be forced to go out to work. The children will have to go to school. And one of the petitioners, a lady, stated that she stated in AR 284-285 that she doesn't want to have her son locked up. Because the grandfathers are locked up, they are losing their memory already. And they are not politically active anymore. And that's a big difference because we cannot require respondents to go back and stop advocating for the political party they so believe in. And that's why I believe the BIA and the immigration judge in not taking all the evidence into consideration. And sometimes they mistreated the evidence by stating that my client had the protection of the police when that was not the case. The mayor, as a person of favor, provided temporary protection. Even when the mayor asked the police for help, they declined to help. And he advised the petitioners to leave El Salvador. Any further questions? Judge Beatty, does that finish that one? No, thank you. Thank you. Okay, I think no further questions on the bench. Thank both sides for your very helpful arguments. The first case on the calendar, Rios Calderas v. Garland, is now submitted for decision. Thank you very much.
judges: W. Fletcher, Rawlinson, Bade